**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LightForce Orthodontics, Inc., <br><br> Petitioner, <br><br> v. <br><br> Align Technology, Inc., <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. 25-MC-91583-AK <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER ON LIGHTFORCE ORTHODONTICS, INC.'S
MOTION TO QUASH**

**ANGEL KELLEY, D.J.**

Before the Court is LightForce Orthodontic, Inc.'s ("LightForce") Motion to Quash or

Modify Align Technology, Inc.'s ("Align") Subpoena, issued pursuant to Fed. R. Civ. P.

30(b)(6). [Dkt. 1]. For the following reasons, the Motion is **GRANTED IN PART** and

**DENIED IN PART**.

## I.    BACKGROUND

On April 11, 2024, Align filed a patent infringement lawsuit against ClearCorrect

Operating, LLC and related entities (collectively "Straumann") in the Western District of Texas,

captioned Align Technology, Inc. v. ClearCorrect Operating, LLC et al., No. 6:24-CV-00187-

ADA-DTG (W.D. Tex.) ("underlying action"). [Dkt. 2 at 3]. Align and ClearCorrect both

produce clear teeth aligners, an alternative form of traditional braces, as well as intraoral

scanners, which take digital pictures of a patient's mouth to create the aligners. [Dkt. 12 at 2].

On July 9, 2024, Straumann filed an antitrust counterclaim against Align, alleging Align has

monopolized the "doctor-directed clear aligner" and "handheld intraoral scanner" markets. [Id.].

To defend against ClearCorrect's antitrust counterclaims, Align, among other things, must articulate the relevant product market. [Dkt. 12 at 2].  Align now seeks documents and testimony from nonparty LightForce, an alleged competitor, to defend against Straumann's counterclaims. [Dkt. 2 at 3].

LightForce produces 3D printed clear ceramic braces and markets them as an alternative to clear aligners and traditional braces. [Dkt. 13-5 at 2, 13-6 at 3].  Each pair of brackets printed by LightForce is customized to the individual patient. [Dkt. 13-6 at 2].  Relevant to Align's defense that it has not limited entry into the relevant product market, LightForce has claimed to have experienced exponential growth and success within the teeth aligner market, reporting a 2,985% fiscal year revenue growth from 2020-2023. [Dkt. 13-8 at 2].

On February 14, 2025, Align served a subpoena for documents on LightForce, designating the District of Columbia as the place of compliance. [Levy. Decl., ¶ 6].  LightForce objected to the Rule 45 subpoena for documents on several grounds, including that Wasington, D.C. was not the proper place of compliance—as the company headquarters are in Burlington, Massachusetts—and that the requests were overbroad, vague, and sought confidential materials without showing a substantial, nonduplicative need. [Id. at ¶ 7].  Align moved to compel[1] compliance with its subpoena, and the District Court for the District of Columbia has yet to issue its ruling. [Dkt. 12 at 4].

On November 13, 2025, Align served an additional subpoena on LightForce, seeking deposition testimony from a corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6). [Dkt. 13-1].  Align requested information across the following six topics:

1. LightForce's efforts to sell Braces Products and compete in the United States, including Your analysis, evaluation, or assessment of any products that

---

[1] In re Motion to Compel Compliance with Subpoena Directed to LightForce Orthodontics, Inc., No. 25-MC-00158.

compete with LightForce Braces Products in the United States, such as Invisalign, ClearCorrect, other Aligner Products, and/or other Braces Products, including but not limited to comparisons of product characteristics, product pricing, estimated market share, and/or product strengths or weaknesses, including any purported advantages of LightForce Braces Products over Aligner Products and/or other Braces Products.

2. LightForce's analysis, evaluation, or assessment of the total addressable market for its products in the United States, including any projections or estimates for growth in revenue or market share of LightForce Braces Products.

3. LightForce's entry into the U.S. market and its revenue growth since entry.

4. LightForce's analysis, evaluation, assessment, or awareness of dentists and orthodontists offering both Aligner Products and Braces Products to the same patient population and/or switching between Aligner Products and Braces Products in their practices for the purpose of straightening teeth and/or treating malocclusion.

5. The use of iTero Scanners by Your customers for the purpose of ordering LightForce Braces Products, including any instructions or tutorials You provide or offer to customers regarding how to create a direct lab connection from the iTero Scanner to transmit or submit scans to LightForce.

6. The documents LightForce produced to the parties in this Case.

On November 25, 2025, LightForce asserted 28 general and specific objections to Aligns requests. [Liverpool Decl. ¶ 14]. On December 4, 2025, Align and LightForce held a meet-and-confer to determine whether the parties could negotiate a more limited line of inquiry. [Liverpool Decl. ¶ 15]. During this meeting, Align narrowed the relevant period to begin on January 1, 2019, instead of the original date of January 1, 2015. [Id.]. Of note, LightForce did not become commercially operational in the United States until 2019. On December 8, 2025, LightForce offered to produce a summary document[2] of information relating to the six topics sought in the

---

[2] LightForce offered to include the following in its summary document:
- A summary of LightForce's business and its physical product offering;
- The general market in which LightForce operates and the definition of the relevant market;
- A description of the types companies that LightForce does and does not compete with;
- LightForce's view of opportunities in the global and U.S. markets;
- LightForce's marketing efforts and to where those marketing efforts are directed;
- Identification of types of products and companies with which LightForce competes;

deposition subpoena contingent upon Align withdrawing its document subpoena and the related motion to compel in the District of Columbia. [Dkt. 13-1 at 2]. Align did not respond to LightForce's proposal, leading LightForce to seek relief before this Court. [Levy Decl. ¶ 23].

## II.   LEGAL STANDARD

Subpoenas issued to nonparties must abide by Rules 26 and 45 of the Federal Rules of Civil Procedure. In re Ranbaxy, No. 19-MD-02878, 2020 WL 5370577, at *2 (D. Mass. Sept. 8, 2020). The Advisory Committee Notes to the 1970 Amendment to Rule 45 state that the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Under Rule 34, which governs the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b). Fed. R. Civ. P. 34. Per Rule 26, the parties are entitled to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance in this context is broad, as a discovery request need not call for evidence that would be admissible at trial, as long as the request "appears reasonably calculated to lead to the discovery of admissible evidence." Id. With that said, the court can limit discovery for numerous reasons, including that the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Although the rules apply with equal force, the scope of discovery can be significantly narrower for nonparties than it is for parties to the underlying litigation. See In re Asacol, No. 15-CV-12730, 2017 WL 11475277, at *5 (D. Mass. June 14, 2017) (citation omitted). Because nonparties are strangers to the underlying litigation, "concern for the unwanted burden thrust upon [them] is . . . entitled to special weight." Id. (quoting Cusumano v. Microsoft Corp., 162

---

- Description of how LightForce views its products in comparison to competing products; and
- LightForce's assessment of its estimated market share.

F.3d 708, 717 (1st Cir. 1998)).  This concern is further elevated when confidential commercial information is requested by a competitor. See id. at *5, 7; FTC v. Amazon, Inc., No. 23-CV-01495, 2026 WL 102452, at *3 (W.D. Wash. Jan. 14, 2026) ("[M]any of the documents sought . . . involve information too sensitive to reveal to one of [the requestor's] primary competitors.").

In addition to the discovery standards under Rule 26, Rule 45(d)(3)(A) *requires* courts to quash or modify a subpoena that "fails to allow a reasonable time to comply" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i), (iv).  "Thus, a court determining the propriety of a third-party subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." In Re Apple iPhone Antitrust Litig., No. 11-CV-06714-YGR-TSH, 2020 WL 5993223, at *3 (N.D. Cal. Oct. 9, 2020).  Additionally, Rule 45(d)(3)(B)(i) *permits* courts to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information."

### A.  Undue Burden

As stated, Rule 45(d)(3)(A)(iv) requires courts to quash or modify a subpoena that "subjects a person to undue burden."  To succeed, the party moving to quash must establish that the subpoena imposes an undue burden. Green v. Cosby, 152 F. Supp. 3d 31, 35 (D. Mass. 2015).  In so doing, it must show the manner and extent of the burden as well as the consequences upon its potential compliance. Id. at 37.  Whether a subpoena imposes an undue burden on a nonparty turns on a fact-specific inquiry. In re Non-Party Subpoena to the Ctr. for the Study of Soc. Pol'y, 659 F. Supp. 3d 54, 58 (D.D.C. 2023).  Courts consider a multitude of factors within their analyses, including the relevance of the documents sought, the necessity of

5

the documents sought, the breadth of the request, alternative access to the information, as well as the expense and inconvenience of the request. See Solamere Cap. v. DiManno, 621 F. Supp. 3d. 152, 159 (D. Mass. 2022); In re Asacol, 2017 WL 11475277, at *6-7.  Of note, in the context of depositions of a corporate entity, Rule 30(b)(6) also requires the party seeking the deposition to specify the topics for examination with "reasonable particularity" so that the corporate designee can prepare. See id. ("If the noticing party does not describe the topics with sufficient particularity . . . the responding party is subject to an impossible task.") (citation omitted). Under that standard, each deposition topic must alert the deponent to the "outer limits of the topics noticed." Id.  Accordingly, courts reject topics that are overly broad, vague, or ambiguous. See, e.g., id.; Gonfrade v. Transamerica Life Ins. Co., No. 25-CV-10096, 2025 WL 1520487, at *2 (D. Mass. May 28, 2025).

**B.  Trade Secrets**

To reiterate, Rule 45(d)(3)(B)(i) permits courts to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information."  To succeed on a motion to quash on these grounds, a subpoena target must first demonstrate that the requested information is a trade secret or another type of confidential information protected by the rule. In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 240-41 (E.D. Pa. 2014).  The burden then shifts to the requestor to establish that "(1) they have a substantial need for the requested disclosures and (2) the information sought from the disclosures cannot otherwise be obtained without undue hardship." Id. at 243.  Among other things, this analysis "requires taking into account the relevance and importance of the material sought, as well as the availability of facts from other sources." In re Apple iPhone Antitrust Litig., 2020 WL 5993223, at *3 (quoting Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980,

985 (4th Cir. 1992)).  If those burdens are satisfied, the court then weighs the requestor's interests versus those of the target and disposes of the motion accordingly. In re Domestic Drywall, 300 F.R.D. at 245-46.[3]

## III.    DISCUSSION

LightForce's opposes the noticed deposition topics on three grounds: (1) the subpoena was untimely, (2) it targets trade secrets without an evidenced substantial need, and (3) the topic areas are vague and unduly burdensome.  As to the first objection, this Court agrees with Align that the deposition request was not untimely.  With that said, the Court will analyze each category noticed in the subpoena as to the latter two objections, if necessary.

### A.    Topic 1

Topic 1 seeks information related to LightForce's business strategy and market analysis, including its "analysis, evaluation, or assessment of any products that compete with" its own. [Dkt. 12 at 4].  The requested information is relevant to the definition of the product market in the underlying antitrust litigation. In re Apple iPhone, 2020 WL 5993223, at *6 ("[W]ithout question, competitors' views and evaluation of the market are relevant to defining a market . . . ." (citation omitted)).  For instance, if deposition testimony revealed that LightForce's executives considered Align to be a direct competitor, that would tend to support Align's definition of the market, which includes both clear aligners and braces products. [See Dkt. 12 at 7-9].  However, the information also falls under the protections of Rule 45(3)(b)(i).  Courts consistently hold that material related to a company's strategy, including competitive and market analyses, are trade

---

[3] Align implies that the analysis is different for subpoenas ad testificatum as compared to that for subpoenas duces tecum [Dkt. 12 at 7], but the case it cites for that proposition says the opposite. Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1328 (Fed. Cir. 1990) ("The quashing of a subpoena *ad testificatum* is rarely granted . . . . However, with the amendment of the rules . . . the substantive matters into which inquiry will be made at the deposition may be revealed in advance. . . . Thus, in this case, the deposition subpoena is equally objectionable for the reasons previously given.").

secrets or confidential commercial information. See, e.g., In re Asacol, 2017 WL 11475277, at *3; FTC v. Amazon, 2026 WL 102452, at *2-3.

Thus, the burden shifts to Align to establish a substantial need for the information that cannot otherwise be met without undue burden. In re Domestic Drywall, 300 F.R.D. at 240-41. Align fails on both prongs. While LightForce's perspective on the market is undoubtedly relevant, Align's need for it stops short of substantial. See In re eBay Seller Antitrust Litig., 2009 WL 10677051, at * 5 (N.D. Cal. Aug. 17, 2009) ("[E]ven though the competitively sensitive documents [Align] seek[s] might have some relevance[,] . . . [a]n antitrust action does not come with an automatic entitlement to force non-parties to reveal their competitive thinking."). Align does not, for instance, explain why LightForce's input is particularly probative of the market definition or critical to its case.  See Act, Inc. v. Sylvan Learning Systems, Inc., 1999 WL 305300, at *2 (E.D. Pa. May 14, 1999); In re Apple iPhone, 2020 WL 5993223, at *6 ([A]n assessment of the relevant markets for [an] antitrust case is an objective inquiry, not one that depends on [a non-party competitor's] views on the subject." (citation omitted)).  Simply put, "there is no reason to think that [LightForce] has a better understanding of its competition with [Align] than [Align] does." In re Apple iPhone, 2020 WL 5993223, at *6.

Moreover, it appears that any need Align has for the information covered by Topic 1 can be met without undue burden.  According to Align, Straumann, LightForce, and Align itself all compete within the same market. [See Dkt. 12 at 7-9].  If Align believes that to be true, it has likely performed its own research and analysis that it can use to define the market. See Snow v. Align Techs., Inc., No. 21-CV-03269, 2023 WL 2823503, at *2 (N.D. Cal. Apr. 6, 2023).  At the very least, it is "fully capable" of doing so. Id.  And if Align's market definition is accurate, then Straumann probably also has relevant market analyses that Align can obtain through discovery

without burdening a nonparty.  See Gray v. Town of Easton, No. 12-CV-166, 2013 WL 2358599, at *3 (D. Conn. May 29, 2013) ("If the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden."); Act, Inc., 1999 WL 305300, at *2.

Align further argues that because "the protective order in the underlying litigation addresses LightForce's confidentiality concerns," this Court should deny LightForce's Motion to Quash. [Dkt. 12 at 10].  Protective orders—particularly ones that limit disclosure to outside counsel, like the one in place here—mitigate the risk of commercially sensitive information being leaked to competitors. See, e.g., In re Ranbaxy, 2020 WL 5370577, at *3.  But they are not ironclad.  For instance, if Align sought to introduce confidential information obtained from LightForce at trial, it would likely have to disclose that information beyond outside counsel. In re eBay Seller, 2009 WL 10677051, at *6.  In any case, the effectiveness of the protective order is wholly separate from whether Align has demonstrated a substantial need that cannot be otherwise met without undue burden. Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1325 (Fed. Cir. 1990) ("The protective order is not a substitute for establishing relevance or need."); In re Asacol, 2017 WL 11475277, at *6.  It is only after the requesting party has met this burden that a court—while balancing the litigants' interests—should consider the protective order's mitigating effect on the risks of disclosure. See In re Domestic Drywall, 300 F.R.D. 234 at 246-47 (considering effect of protective order while balancing litigants' interests, after requestor demonstrated substantial need).

Because Align has failed to establish a substantial need, it is unnecessary to determine if Topic 1 results in an undue burden to LightForce pursuant to Rule 45(d)(3)(A)(iv).  Nonetheless, the Court finds that Topic 1 places an impermissible undue burden on nonparty LightForce.

Courts have repeatedly granted motions to quash when the requesting party seeks overbroad information over long periods of time and when such information requires additional resources in its accumulation and presentation. See Moon v. SCP Pool Corp., 232 F.R.D. 633, at 637-38 (N.D. Cal. 2005) (holding subpoena imposed undue burden when seeking documentation for all sales of a particular product over a ten-year span); In re Non-Party Subpoena to the Ctr. for the Study of Soc. Pol'y, 659 F. Supp. 3d at 60-61.  Within their Motion to Quash, LightForce emphasizes the significant amount of time and manpower necessary to properly prepare a corporate designee to testify. [Dkt. 2 at 15].  Answering Topic 1's sweeping inquiry would require LightForce to identify, collect, and synthesize a range of evolving documentation beginning from January 1, 2019. [Id.].  Compiling over seven years' worth of documents would take significant time and resources, no matter how accessible such documentation may be. Further, not only must LightForce allocate significant time to compile such documentation but must also expend additional effort to properly educate a corporate designee to sufficiently testify to such documentation. [Id.].

    Further, as LightForce notes, "party data, including Algin's own data, as well as expert analysis are superior and less burdensome sources for demonstrating the competitive effects issues." [Dkt. 2 at 15-16].  Additionally, LightForce's opinions regarding "any purported advantages of LightForce Braces Products over Aligner Products and/or Braces Products" is publicly available online and has been provided to the Court by Align itself. [See Dkt 13-6]. Exhibit 6 of Align's Declaration re Memorandum in Opposition to Motion to Quash Rule 45 Subpoena provides an article written by LightForce in which LightForce compares and emphasizes its product's advantages against Invisalign and other clear aligner products. [Id.].

10

In light of Align's failure to establish a substantial need for the requested information that cannot be otherwise met without undue burden, as well as the undue burden placed on LightForce, the Court **GRANTS** LightForce's Motion to Quash [Dkt. 1] with regard to Topic 1.

### B.    Topic 4

The Court now turns its attention to Topic 4, which suffers from many of the same infirmities as Topic 1.  Topic 4 seeks information from LightForce about providers that offer "Aligner Products and Braces Products" to the same patient populations or for the same purposes.  Align seeks this material for the same purpose as the information covered by Topic 1—to define the market. [Dkt. 12 at 8-9].  It is relevant for the same reasons. See In re Asacol, 2017 WL 11475277, at *3 ("To determine if two products are in the same market, we ask if they are readily substitutable for one another . . . ." (quoting Mylan Pharms. Inc. v. Warner Chilcott Public Ltd., 838 F.3d 421, 435-36 (3rd Cir. 2016))).  As research underlying LightForce's market analysis, it qualifies as confidential commercial information. Id.  Align offers no reasons why its need for the information covered by Topic 4 is any greater than for that covered by Topic 1 or why it may be more difficult for it to obtain the information itself.  As LightForce notes, economists are able and routinely construct total addressable market and growth models from party materials and public sources. [Dkt. 2 at 16].

Therefore, Align has failed to demonstrate a substantial need for the requested information that cannot be otherwise met without undue burden, and the Court **GRANTS** LightForce's Motion to Quash [Dkt. 1] with regard to Topic 4.

### C.    Topic 2

As Align explains, Topic 2, like Topics 1 and 4, seeks information about LightForce's "competitive positioning." [Dkt. 12 at 8].  Specifically, it asks for LightForce's assessment of the

11

"total addressable market for its products" and projections for future growth. [Dkt. 12 at 13].  As explained with Topics 1 and 4, the requested material is both relevant and confidential. However, Topic 2 does differ from those topics in one regard: While Align has likely already performed market research similar to what is requested in Topics 1 and 4, it is unlikely that Align has done so for Topic 2.  LightForce is likely the only source of the specifically requested information, which the court must consider. See Snow, 2023 WL 2823503, at *2 (ordering disclosure of documents that were in sole possession of nonparty).  Nevertheless, Align has not demonstrated a substantial need for this information that cannot be otherwise met without undue burden.  It seeks this information for the same purposes as the information sought by Topics 1 and 4—to support its proposed market definition.  As explained above, Align has access to other sources of information to meet that need, including through experts.

Additionally, the Court again finds that the materials requested in Topic 4 places an undue burden on LightForce.  As previously stated, courts have repeatedly granted motions to quash when the requesting party seeks overbroad information over long periods of time and when such information requires additional resources in its accumulation and presentation. See Moon, 232 F.R.D. at 637-38; In re Non-Party Subpoena to the Ctr. for the Study of Soc. Pol'y, 659 F. Supp. 3d at 60-61.  Topic 4 is temporally open-ended, requiring LightForce to take on the burden of collecting and synthesizing its customer facing information across "innumerable practices and timeframes." [Dkt. 2 at 16].  LightForce will also be required to prepare a designee to testify about these expansive materials, which more than likely will take significant time and resources. [Id.].  Further, as LightForce highlights, Align would also be aware and keep records as to dentists' behaviors and has the ability to hire an expert to expand upon such data. [Id.].  To

require LightForce to compile, train a designee, and present already available information places an undue burden upon a nonparty. See In re Shaefer, 331 F.D.R. at 318.

Therefore, the Court **GRANTS** LightForce's Motion to Quash [Dkt. 1] with regard to Topic 2.

### D.    Topic 3

Topic 3 requests testimony about "LightForce's entry into the U.S. market and its revenue growth since entry." [Dkt. 12 at 4]. That information is relevant to the existence of barriers to entry into the market, which, if present, would tend to demonstrate Align's monopoly power. See Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 196-97 (1st Cir. 1996). As Align states, to properly defend against the antitrust counterclaims, discovery into the relevant market, such as the success of recent entrants into the market, is essential. [Dkt. 12 at 3]. LightForce is a player within the custom teeth straightening market, publicly presenting itself as an alternative to Align's clear aligners. [See Dkt. 13-6]. Receiving FDA clearance in 2019, LightForce is an appropriate nonparty to subpoena to assess the success of recent entrants into the custom teeth straightening market. [Dkt. 13-7 at 4]. To this end, the Court finds that the value of such information to the defense of the underlying litigation outweighs the potential burdens emphasized by LightForce. With that said, the first portion of Topic 3, LightForce's "entry into the U.S. market" is insufficiently particular and overbroad. Such a request fails to identify the nature of the testimony Align is seeking, making it impossible for a corporate designee to prepare for the deposition. Other than "entry into the U.S. market," LightForce fails to identify the relevant topics, let alone the "outer limits of the topics noticed." Furthermore, the request lacks any recognizable temporal limitation.

With this in mind, to protect a nonparty's interest in avoiding undue burden while recognizing the value of the information sought for the underlying litigation, courts may give leave to amend so the request can be made with greater specificity. See Fed. Trade Comm'n v. Thomas Jefferson Univ., No. 20-CV-01113, 2020 WL 4347371, at *3 (E.D. Pa. July 29, 2020) (requiring modification of requests to include temporal limitations). Giving leave to articulate both the outer limits of the topics noticed and the relevant time period will allow Align to compile the information necessary for their defense while ensuring LightForce can efficiently collect and testify to such information without undue burden. As such, Align is **ORDERED** to amend Topic 3, within **14 days** of the date of this order, to specify the outer limits of the topics noticed and the particular period from which it seeks this information.

The Court must also consider LightForce's contention that the subpoena should be quashed with regard to Topic 3 because it requests trade secrets or otherwise confidential commercial information. [Dkt. 2 at 11]. The portion of Topic 3 pertaining to LightForce's "entry into the U.S. market" is so broad that it must include a large amount of confidential information. But because the Court grants Align leave to clarify its request, it declines to address the confidentiality issues as to that portion of Topic 3 at this time. The Court will address though, the second portion of Topic 3, regarding LightForce's "revenue growth since entry." LightForce has publicly disclosed at least some information about its revenue growth. For example, it published an article on its website announcing that it was one of the fastest growing tech companies in North America based on its 2,985% revenue growth from 2020 to 2023. [Dkt. 13 ¶ 21; Dkt. 13-8 at 1]. Information that a corporation discloses on its own public website is not entitled to protection as confidential commercial information under Rule 45(d)(3)(B). See In re Asacol, 2017 WL 11475277, at *7 (explaining that program terms that were disclosed publicly to

14

patients and advertisements that were publicly available were not confidential).  Therefore, LightForce must comply with the subpoena with regard to information it has publicly disclosed regarding its revenue growth since entry into the U.S. market.

Notwithstanding the above, information about revenue growth that LightForce has not made public may well qualify as confidential.  See 2311 Racing LLC v. Nat'l Basketball Ass'n, No. 25-MC-00146, 2025 WL 1793959, at *6 & n.9 (S.D.N.Y. June 30, 2025) (holding professional sports leagues' revenue figures were confidential).  So, the question is whether Align has shown a substantial need for nonpublic revenue growth information that cannot be otherwise met without undue burden.  The answer is yes.  LightForce's revenue growth is highly probative of the existence of barriers to entry into the market that Align alleges it shares with LightForce.  See Coastal Fuels of P.R., 79 F.3d at 197 (noting that a corporation's monopoly power can be proved by showing high barriers to entry in a market, causing competitors' inability to scale up).  As Align puts it, "LightForce's competitive positioning and success provide critical evidence of a competitive teeth-straightening market that accommodates new entrants." [Dkt. 12 at 8].  Furthermore, LightForce is likely in sole control of any nonpublic information concerning its revenues and no information is readily available to Align that could serve as a substitute.

Balancing the interests of the litigants, the Court concludes that LightForce must comply with the subpoena with regard to nonpublic information concerning its revenue growth, as contemplated by Topic 3.  As previously explained, this information is important to Align's antitrust defenses.  And the risks that disclosure to Align presents are sufficiently mitigated by the protective order in the underlying litigation, which allows nonparties like LightForce to limit disclosure of confidential information to outside counsel, court staff, and third parties only as

15

necessary. See Order Granting Motion for Protective Order, Align Technology, Inc. v. ClearCorrect Operating, LLC et al., No. 6:24-CV-00187-ADA-DTG (W.D. Tex.) (Dkt. 147);  In re Ranbaxy, 2020 WL 5370577, at *3.

Therefore, the Court **ORDERS** as follows as to Topic 3:

1. As to LightForce's "entry into the U.S. market," Align is **ORDERED** to amend Topic 3, within **14 days** of the date of this order, to specify the outer limits of the topics noticed and the particular period from which it seeks this information.

2. As to LightForce's "revenue growth since entry" into the U.S. market, the Court **DENIES** LightForce's Motion to Quash. [Dkt. 1].

### E.    Topic 5

Topic 5 requests testimony about LightForce's customers' use of iTero Scanners and instructions that LightForce provides to its customers "regarding how to create a direct lab connection from the iTero Scanner to transmit or submit scans" to LightForce. [Dkt. 12 at 4]. The information covered by this topic is relevant to Align's antitrust defenses.  According to Align, in the underlying litigation, Straumann alleges that Align has improperly excluded competitors from using the iTero scanners. [Dkt. 12 at 2-3].  If Align and LightForce are part of the same market, testimony showing that dental health providers use iTero Scanners to order LightForce products would tend to undermine Straumann's allegations.  In addition, instructions that LightForce provides to its customers for how to directly connect iTero Scanners to LightForce would shed light on how difficult it is for Align's competitors to use iTero Scanners successfully.

Topic 5 very likely seeks confidential commercial information, particularly with regard to the instructions that it provides to LightForce's customers.  LightForce explains that testifying

16

about Topic 5 would "risk[] exposing LightForce's proprietary workflows, vendor interfaces, and technical parameters." [Dkt. 2 at 17]. Regardless, Align has demonstrated a substantial need for the information, largely for the same reasons that the information covered by Topic 5 is relevant. Simply put, LightForce's testimony (or that of another competitor that uses iTero Scanners) is necessary for Align to defend itself against Straumann's claims. Align would also likely struggle to obtain this information from an otherwise accessible source. While Align might know which providers it has sold iTero Scanners to, it likely does not have a way of knowing which of those providers use iTero Scanners with non-Align products. And while it might have a technical understanding of how to connect iTero Scanners to a competitor's system, instructions from a competitor offer a perspective on the matter that Align does not have insight into. The requested information is necessary to Align's defense and the risks of disclosure are mitigated by the protective order in the underlying litigation.

The Court must now consider if this request for testimony must be quashed for another reason, such as a lack of particularity or a determination that the request causes an undue burden to LightForce. The Court is unmoved by LightForce's argument that such information is not needed from a third-party, as Align themselves would be the "authoritative source of iTero integration protocols, user documentation, and lab connection enablement." [Dkt. 2 at 17]. As stated above, the information at issue is not sought to establish that such capabilities exist, but rather, to establish that nonparty competitors, like LightForce, are able to utilize the iTero Scanners with their own products. LightForce offers no additional argument that such a request is otherwise unduly burdensome under Fed. R. Civ. P. 45(d)(3)(A)(iv). As a result, Align has successfully established the value of the requested information in the underlying litigation and LightForce has failed to establish an undue burden.

Therefore, the Court **DENIES** LightForce's Motion to Quash [Dkt. 1] with regard to Topic 5.

### F.    Topic 6

Finally, Align has requested that LightForce offer deposition testimony regarding "[t]he documents LightForce produced to the parties in this Case."  As stated above, LightForce has yet to produce documents to Align and the documents request is the subject of a pending motion to compel in the District Court for the District of Columbia.  As a result, this Court **DENIES** LightForce's Motion to Quash [Id.], but only **ORDERS** compliance subject to the forthcoming ruling by the District Court for the District of Columbia.  Further, the Court will allow a supplemental objection by LightForce, should it be necessary, within 14 days of any order by the court in Washington, D.C.

## IV.    CONCLUSION

For the foregoing reasons, LightForce's Motion to Quash [Dkt. 1] is **GRANTED IN PART** and **DENIED IN PART**, subject to the limitations and supplemental filings requested in this Order.

**SO ORDERED.**

Dated: April 27, 2026                                          /s/ Angel Kelley
                                                                      Hon. Angel Kelley
                                                                      United States District Judge

18